IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ILLINOIS CENTRAL RAILROAD COMPANY                               PLAINTIFF

VERSUS                               CIVIL ACTION NO. 5:05cv160-DCB-JMR

LISA BLAIR CAIN; BRIAN KELLY
BLAIN; GENEVIEVE BOHRER a/k/a
GENNY CAIN OR GENEVIEVE CAIN;
and JOHN DOES 1-10                                             DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the defendants' Motion to Dismiss [**docket entry no. 2**] and the defendants' Motion to Dismiss First Amended Complaint [**docket entry no. 9**].  Having reviewed the Motions, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

### FACTS AND PROCEDURAL HISTORY

Mark Cain was a career engineer for the plaintiff, Illinois Central Railroad Company (hereinafter "ICRC").  On July 10, 2005, Mr. Cain was killed in an accident involving a collision between two ICRC trains.  It is uncontested that Mr. Cain is survived by his two adult children, Lisa and Brian Cain.  The parties, however, dispute whether Genevieve Bohrer Cain is an entitled beneficiary of Mr. Cain's estate.[1]

---

[1] ICRC contends that Genevieve Bohrer Cain was not legally married to Mr. Cain.  The defendants do little to address this claim as it has no relevance to their present motions to dismiss; however, Genevieve Bohrer Cain is referred to as Mr. Cain's "wife" in the defendants' Motion to Dismiss.  See Motion to Dismiss, at 2.

On August 25, 2005, ICRC filed a "Complaint for Interpleader and Declaratory Relief" with this Court. After receiving the defendants' Motion to Dismiss that complaint, the plaintiff filed a "First Amended Complaint for Declaratory Relief" on October 13, 2005, wherein ICRC excises its previous interpleader claim. Thereafter, the defendants filed the presently considered Motion to Dismiss First Amended Complaint on November 14, 2005. Because the defendants' first Motion to Dismiss pertains to a since-amended complaint and all the relevant arguments contained therein are re-raised in response to the plaintiff's amended complaint, the Court will deem the first Motion to Dismiss to be moot.

## DISCUSSION

A district court should dismiss for failure to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "The complaint must be liberally construed in favor of the plaintiff, and all well-pleaded facts accepted as true." Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 374 (5th Cir. 2004). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).

ICRC's First Amended Complaint for Declaratory Relief claims

that this action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which allows federal courts to issue declaratory actions regarding a "case of actual controversy within its jurisdiction." The plaintiff admits for purposes of this action that it is liable for Mr. Cain's death and seeks to have the Court resolve the "dispute as to the identities of the lawful beneficiaries and as to the amount of damages owed under the [Federal Employer's Liability Act]." First Amended Complaint, ¶1.

In response, via the pending Motion to Dismiss, the defendants argue that ICRC is engaging in an impermissible form of forum shopping by attempting to fashion this case into the mold of a declaratory action. It is contended by the defendants that the *potential* claim of Mr. Cain's FELA representative in a *potential* action should not empower this Court to issue a declaratory judgment.

The Fifth Circuit has detailed the district court's responsibility when considering whether or not to entertain a declaratory judgment action:

> When considering a declaratory judgment action, a district court must engage in a three-step inquiry. First, the court must determine whether the declaratory action is justiciable. Typically, this becomes a question of whether an "actual controversy" exists between the parties to the action. See Rowan Companies, Inc. v. Griffin, 876 F.2d 26, 27-28 (5th Cir.1989). . . . Second, if it has jurisdiction, then the district court must resolve whether it has the "authority" to grant declaratory relief in the case presented. See Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc., 996 F.2d 774, 776 (5th Cir.1993) ("Prior to determining whether

-3-

>the district court abused its discretion by failing to review the merits of this case, this Court must first determine whether the district court had authority to grant a declaratory judgment here."). Third, the court has to determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action. See id. at 778 (recognizing a district court's vast discretion in the declaratory judgment context). We review the dismissal of a declaratory judgment action for abuse of discretion. See Wilton v. Seven Falls Co., 41 F.3d 934, 935 (5th Cir.1994).

Orix Credit Alliance, Inc. v. Wolfe, 212 F.3d 891, 895 (5th Cir. 2000).

A. Justiciability

An "actual controversy" exists when there is "a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests." Id. The burden of proving that an actual controversy exists lies upon the party seeking the declaratory judgment. See Texas. v. West Publishing Co., 882 F.2d 171, 175 (5th Cir. 1989).

ICRC contends that this justiciable requirement is present because there are "two real and actual controversies." Pl. Memo. in Support of Response to Def. Motion to Dismiss, at 9. The first alleged controversy is "whether Ms. [Genevieve] Bohrer is entitled to recover under the [Federal Employer's Liability Act] for the death of Mark Wayne Cain." Id. The second alleged controversy is "the amount of pecuniary or financial loss that Mark Wayne Cain's surviving widow, if any, or dependent children, if any, can recover as damages . . . ." Id. Apparently presupposing these

allegations, however, is ICRC's belief that it will be or would have been sued by Mr. Cain's beneficiaries under Federal Employer's Liability Act.  Thus, a review of that statute will aid the Court's discussion.

The Federal Employer's Liability Act, 45 U.S.C. § 51, *et seq.*, (hereinafter "FELA") imposes liability upon railroad operators through the following language:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.  The Court will now discuss whether either or both of the two "real and actual" controversies alleged by the railroad exist so as to allow the declaratory action to proceed.

*a.  Is Genevieve Bohrer's alleged status as a non-beneficiary an "actual" controversy?*

No FELA case has been filed against the railroad in regard to Mr. Cain's death.  As of the time of the filing of ICRC's

complaint, the defendants maintain that an estate had not yet been established for the decedent and no personal representative had been named. Thus, it is not clear that a FELA lawsuit will ever be filed against ICRC. What is clear, however, is that, if such a lawsuit was brought, it would be by Mr. Cain's <u>personal representative</u>, not by the beneficiaries of his estate. <u>See American Railroad Co. of Porto Rico v. Birch</u>, 224 U.S. 547 (1912) (holding that the cause of action under FELA vests in the personal representative of the estate, not in the beneficiaries). If there is any dispute concerning which individuals constitute the lawful beneficiaries of that estate, that dispute would lie between the <u>representative</u> and <u>those alleged beneficiaries</u>.

A Fifth Circuit opinion addressing a Jones Act case is helpful to the Court's analysis.[2] <u>See</u> <u>Calton v. Zapata Lexington</u>, 811 F.2d 919 (5th Cir. 1987). In <u>Calton</u>, the decedent employee, who had been killed in an explosion on a drilling rig, was survived by a first wife and two sons and his then current wife and two daughters. <u>Id.</u> at 920. Calton's current wife filed a Jones Act suit seeking damages for her husband's death in a Louisiana district court, which thereafter appointed her as the administratrix of the estate. The administratrix and the defendant

---

[2] The Jones Act, a federal statute which addresses injuries to maritime workers, is recognized as companion law to FELA and its provisions are often interpreted under FELA jurisprudence. <u>See</u> <u>Kernan v. Am. Dredging Co.</u>, 355 U.S. 426 (1958); <u>Nunez v. Am. Seafoods</u>, 52 P.2d 720 (Alaska 2002).

entered into a settlement agreement and the Jones Act claim was dismissed. Id. at 920-21. Afterwards, Calton's first wife brought suit in her sons' names against the same defendant, but the district court dismissed the suit, citing the settlement agreement. Id. at 921. On appeal, the Fifth Circuit affirmed. The court reasoned that because only the personal representative of the estate is empowered to bring an action "on behalf of" the beneficiaries, the beneficiaries must depend upon that representative to protect their interests in the Jones Act claim. Id. at 922. The court went on to explain that if the alleged beneficiaries felt aggrieved by that representative's conduct in the case, their claim would not lie against the Jones Act defendant, but rather against the representative for breach of fiduciary duty. Id. The court noted in conclusion:

> Congress chose to protect seamen's employers by funneling all suits through a single personal representative. In the vast majority of cases, all the beneficiaries can protect their interests, and the consolidation of authority facilitates prompt payment of claims.

Id.

Similarly in this case, the FELA action, if one were brought, would be between the estate's representative and ICRC. Any dispute as to who the rightful beneficiaries of Mr. Cain's estate are, has not yet been raised by that representative or the alleged beneficiary. Even if that question arises, the dispute would be between the representative and that alleged beneficiary. ICRC

cannot rely upon this alleged controversy to maintain its declaratory action.

*b. Does the issue of damages create a "real and actual" controversy to maintain the declaratory action?*

In the first amended complaint, ICRC "admits, solely for the purposes of this lawsuit, that it is liable under the FELA to the lawful wrongful death beneficiaries of Mark W. Cain[.]" First Amended Compl., ¶1. The plaintiff contends, therefore, that the amount of damages owed to Mr. Cain's beneficiaries constitutes an actual controversy so as to allow its declaratory action to proceed. Inasmuch as it is unclear whether or not a FELA action will be initiated by the estate's representative, this alleged controversy is not ripe for adjudication. The purpose of the Declaratory Judgment Act is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage had accrued." Nucor Corp v. Acerson y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 577 (7th Cir. 1994) (internal quotations and citations omitted); see also United Parcel Service, Inc. v. Pennie, 2004 WL 206547, at *3 (N.D. Ill. Sep. 8, 2004) (holding that the Declaratory Judgment Act "does not authorize a party to seek a determination of its adversary's rights and obligations and potential damages" but rather is to be used to "avoid accrual of avoidable damages to one not certain of his rights"); Ebenisterie Beaubois Ltee v. Marous Bros. Const., Inc.,

2002 WL 32818011, at *9 (N.D. Ohio Oct. 17, 2002) (holding that "the determination and assessment of damages are not the primary purpose of a declaratory action") (quoting Fireman's Fund Ins. Co. v. Hanley, 140 F. Supp. 206, 213 (W.D. Mich. 1956)). The issue of damages does not create an "actual" controversy of sufficient immediacy to empower this Court to hear the railroad's declaratory judgment claim. Therefore, the defendants' Motion to Dismiss will be granted.

Alternatively, in the event that this determination was in error, the Court would, in its discretion, also decline to exercise jurisdiction over this action as discussed in the following section.[3]

B. Discretion

While a district court enjoys wide discretion when deciding whether or not to consider an action for a declaratory judgment, the Fifth Circuit has mandated that the following factors be

---

[3] The second required element for hearing a declaratory action is a determination that the court has the "authority" to hear the case. As a general rule, "the district court may not consider the merits of a declaratory judgment action when 1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, 2) the state case involves the same issues as those involved in the federal case, and 3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act." Travelers Ins. Co., 996 F.2d at 776 (citing Texas Employers' Ins. Ass'n v. Jackson, 862 F.2d 491, 506 (5th Cir. 1988) (en banc)).

Inasmuch as no state action has yet been brought by Mr. Cain's representative it is apparent that, if an actual controversy existed between the parties, this Court would have the "authority" to issue a declaratory judgment.

considered by the court when deciding the issue:

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> 3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> 4) whether the possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> 5) whether the federal court is a convenient forum for the parties and witnesses; and
>
> 6) whether retaining the lawsuit in federal court would serve the purpose of judicial economy

Traveler's Ins. Co., 996 F.2d at 778. Each factor will be examined in turn.

*1. Pending state action*

Again, there is no pending state action in this case. "[T]he absence of any pending related state litigation strengthens the argument against dismissal of the federal declaratory action." Sherwin-Williams Co. v. Holmes County, 343 F.3d 383, 396 (5th cir. 2003). Thus, this factor would seem to favor ICRC's position inasmuch as there is no other contemporaneous forum where its responsibilities towards Mr. Cain's beneficiaries will be resolved. However, the declaratory defendants note that at the time this declaratory action was filed no personal representative had yet been selected for Mr. Cain's estate. It is contended by the defendants that the FELA suit is only properly brought by that

-10-

representative. Therefore, the lack of a pending state action is not dispositive.

*2. Anticipatory filing*

A dismissal of the declaratory action may be favored where a plaintiff has filed the action in anticipation of an imminent lawsuit being brought by the defendant. ICRC admits that it filed "this action after Defendants threatened litigation and after receiving a letter of representation from Defendants' attorney." The railroad contends that it had a "proper purpose" in doing so because this action will allow "potential defendants to resolve a dispute without waiting to be sued[.]" Memo. in Support of Pl. Response to Motion to Dismiss, at 15 (quoting Sherwin-Williams, 343 F.3d at 397). Indeed, "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" Sherwin-Williams, 343 F.3d at 391.

However, where a party files an anticipatory declaratory action before the declaratory defendant is legally able to bring a state action, improper "procedural fencing" may be found. See Id. at 397 n.7; Aetna Cas. & Sur. Co., 139 F.3d at 423 (dismissing federal declaratory action because it was filed prior to time that the defendant could have properly brought his case in the state court system). Mr. Cain's beneficiaries note in their Reply that

-11-

"only the estate's personal representative can bring a[] FELA action on behalf of the beneficiaries." Def. Reply to Pl. Response to Motion to Dismiss, at 2. In American Railroad Co. of Porto Rico v. Birch, 224 U.S. 547 (1912), the Supreme Court held that the cause of action under FELA vests in the personal representative of the estate, not in the beneficiaries.

While ICRC maintains that "Lisa Cain and/or Brian Cain is/are the personal representative(s) of Mr. Cain's estate", the defendants note that an "estate has not yet been established and a personal representative has not been appointed. The investigation of [the] accident by the National Transportation Safety Board (NTSB) is still ongoing." Motion to Dismiss, at 2. As noted above, "conclusory allegations" need not be accepted as true in deciding upon a motion to dismiss. See Taylor v. Books a Million, Inc., 296 F.3d 276 (5th Cir. 2002) (holding that plaintiff's conclusory allegation in his complaint that his suit was timely was insufficient to defeat motion to dismiss). Thus, the Court need not give credence to ICRC's simple assertion that Lisa and Brian Cain are acting as the personal representatives of Mr. Cain's estate. The fact that those individuals are referred to in both the disjunctive and conjunctive in ICRC's complaint counsels the Court to disregard ICRC's unsubstantiated allegation that they are

acting as the estate's personal representative.[4] If no representative had yet been named at the time of filing this declaratory action, then ICRC's anticipatory filing would be improper inasmuch as the representative never had the opportunity to file a claim on the estate's behalf in a forum of his or her choosing.

Alternatively, even if there was an appointed representative at the time of filing as the complaint suggests, then it still appears that ICRC improperly initiated this action in the hope of securing a forum of its choice as discussed in the following section.

*3. Forum shopping*

The Declaratory Judgment Act is not a tool be used by potential litigants to secure a forum of their choosing. New Orleans Public Serv., Inc. v. Majoue, 802 F.2d 166, 168 (5th Cir. 1986) ("The wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum"). Section 56 of FELA states that "the jurisdictions of the courts of the United States under this chapter shall be concurrent with that of the courts of the several states." Thus, Congress has expressed an intent to allow a FELA plaintiff

---

[4] Moreover, FELA refers only to a singular "representative" who may seek damages on behalf of the beneficiaries. Thus, it is unclear why ICRC claims that both Lisa and Brian Cain may be acting as the personal representatives of the estate.

his or her choice of either a federal or state forum for that litigation.  Moreover Congress has also mandated that FELA actions brought in a state forum cannot be removed to federal court.  See 28 U.S.C. § 1445(a) ("A civil action in any State court against a railroad or its receivers or trustees arising under [FELA] may not be removed to any district court of the United States").  Some courts have determined that these statutes demonstrate that Congress intended to allow the FELA plaintiff a choice of his or her forum.  See Terisner v. Union Pacific R. Co., 740 F. Supp. 1519, 1523 (D. Kan. 1990) (noting that it was "the clear intent of Congress to give an FELA plaintiff untrammeled choice between state and federal jurisdictions") (quoting DeMaio v. Consol. Rail Corp., 489 F. Supp. 315, 316 (S.D.N.Y. 1980)).  But see Gill v. Consol. Rail Corp., 1985 WL 6031, at *4 (D. Del. June 7, 1985) (noting that the legislative history on restricting removal of FELA claims filed in state court is largely silent as to congressional intent, but indicating that the restriction may have been intended to relieve the federal courts of litigation).

 Regardless of congressional intent, the pleadings reflect that ICRC filed this action after being threatened with litigation from the beneficiaries once negotiations had broken down between the parties.  There was no indication that this threatened litigation was unduly delayed after this threat was made or that the railroad was in reasonable apprehension of an unknown number of lawsuits in

regard to this matter. Rather, it seems clear that ICRC was motivated to file the instant suit by a desire to secure a federal forum. Thus, it appears that the railroad has engaged in "procedural fencing" by forum shopping through imposition of the Declaratory Judgment Act. This factor, therefore, also weighs in favor of dismissal.

*4. Inequities*

The next factor the Court must consider is whether or not there are any inequities in allowing the declaratory plaintiff to gain precedence in time. Both the federal and state courts are fully capable of resolving this FELA claim. The Court is not aware of any particular advantage that the plaintiff would garner through this action. Thus, this factor would favor retention of the declaratory judgment suit.

*5. Convenience*

Next, the Court must consider whether the federal forum is a convenient one for the parties and witnesses. Again, both the state and federal courts could hear and decide this case. No special issues of inconvenience of the parties has been brought to the Court's attention. Therefore, this factor would also favor denying the defendants' motion to dismiss.

*6. Judicial Economy*

The last factor to consider is whether retaining the lawsuit in federal court would serve the purpose of judicial economy.

Again, neither the federal nor the state court would provide any special advantage over the other. This factor, therefore, does not favor dismissal.

In weighing all of the aforementioned factors, the Court concludes that, in its discretion, this action should be dismissed. This case is not one in which the plaintiff was stuck in a jurisprudential limbo, unsure of its liability to an unknown number of claimants and facing perhaps incongruous judgments in a multitude of jurisdictions. Instead, ICRC was faced with the possibility of a single litigation brought on behalf of Mr. Cain's estate where one court and one judgment could have resolved the railroad's liability in this matter. Thus, no compelling reason presents itself for the Court to hear this action.

On the other hand, it is abundantly clear that the plaintiff, fearing that a suit would be initiated by Mr. Cain's beneficiaries in a forum of their choosing, sought to preempt that action by fashioning what is clearly a FELA case traditionally brought by the decedent worker's representative into a purported "declaratory" judgment suit in this Court. Congress provided FELA plaintiffs with an opportunity to choose their own forum in seeking redress against railroad companies for injuries suffered by their workers. To allow the present action to proceed would subvert that ability and rob Mr. Cain's personal representative of his or her right to first decide whether or not to seek any judgment against the

railroad, and, if he or she so decides, where to seek that compensation.  This action will be dismissed with prejudice.

## CONCLUSION

Based on the reasoning and authority set forth above, the Court finds that the defendants' Motion to Dismiss is well-taken. This action will be dismissed both because the case is not justiciable under the requirements of Orix Credit Alliance or, alternatively, because the Court exercises its discretion in favor of dismissal.  Accordingly,

IT IS HEREBY ORDERED that the defendants' Motion to Dismiss [**docket entry no. 2**] is **MOOT;**

IT IS FURTHER ORDERED that the defendants' Motion to Dismiss First Amended Complaint [**docket entry no. 9**] is **GRANTED;**

A separate final judgment dismissing this action with prejudice shall be entered in accordance with Fed. R. Civ. P. 58.

SO ORDERED, this the 12th day of April, 2006.


    S/DAVID BRAMLETTE
    UNITED STATES DISTRICT JUDGE